UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION





FILED

MAY 17 2006

```
******************************************************************
                                *
SALLY HIGGINS,                  *     CIV 05-4023
                                *
          Plaintiff,            *
                                *
     -vs-                       *     MEMORANDUM OPINION
                                *     AND ORDER
ALBERTO GONZALES, Attorney General *
for the United States of America; and the *
UNITED STATES OF AMERICA,       *
                                *
          Defendants.           *
                                *
******************************************************************
```

Plaintiff, Sally Higgins, brought this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, alleging race discrimination and retaliation. Defendants filed a Motion for Summary Judgment, Doc. 12. The motion has been fully briefed and the parties presented oral argument on the motion during the pretrial conference held in this case on March 23, 2006. Defendants' motion will be granted for the reasons set forth below.

## BACKGROUND

Plaintiff is a Native American woman and a former employee of the United States Attorney's Office in the District of South Dakota. She was hired to work in the Rapid City, South Dakota, office on June 25, 1999. The position for which Plaintiff was hired was a two-year term position as an Assistant United States Attorney ("AUSA"). The term position for which Plaintiff was hired was to work in the CIRCLE project and to prosecute criminal cases in the Rapid City office. The CIRCLE project was established by the Department of Justice to enhance tribal justice systems through community-based strategic planning.

The person Plaintiff claims discriminated against her on the basis of race and retaliated against her was her supervisor, Mara Kohn. Kohn was the Deputy AUSA in the Rapid City office during the relevant time period. There are no allegations in this action that any other person employed by the United States Attorney's Office discriminated or retaliated against Plaintiff. The treatment Plaintiff received from Kohn was at best abrasive and unprofessional. There were several other AUSA's who worked with Plaintiff in the Rapid City Office, however, that testified they received some similar type of treatment from Kohn although not in as great an amount as received by Plaintiff. Those same AUSA's did not believe Kohn had the qualities to be an effective supervisor. Kohn's treatment of Plaintiff while they were both working in the Rapid City office is further explained below in the discussion concerning alleged adverse employment actions.

Plaintiff's term position in the Rapid City office was scheduled to expire on August 17, 2001. Congress cancelled additional funding for the CIRCLE project, so Plaintiff's term could not be renewed. In June 2001, the Executive Offices of the United States Attorneys ("Executive Offices") announced a hiring freeze for any United States Attorney's Office that did not have a permanent United States Attorney ("USA") in place. The District of South Dakota did not have a permanent USA in place in June 2001. Rather, Michelle Tapken was serving as an Interim USA in June, July and August 2001. Despite the hiring freeze, Tapken sought and obtained permission from the Executive Offices to offer Plaintiff a new two-year term position, which was unrelated to the CIRCLE project term position she had been hired to fill in June 1999. This was the only position Tapken filled as the Interim USA during that time period. Tapken decided to locate the new term position in the Pierre, South Dakota, branch office. On August 14, 2001, Plaintiff was informed she would be offered a new two-year term position in the Pierre branch office and she accepted the new position on August 15, 2001.

Plaintiff moved to Pierre and began her new term position in August 2001. There was no change to Plaintiff's salary or benefits when she moved to the Pierre office. On October 20, 2001, Plaintiff resigned her position to accept a position with the Department of Interior in New Mexico.

2

The new position paid Plaintiff a higher salary than she was earning with the United States Attorney's Office in South Dakota at the time of her resignation.

## DISCUSSION

Summary judgment is appropriate if the moving party establishes that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56©; *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 256 (1986). In reviewing a motion for summary judgment, this Court views the evidence in a light most favorable to the non-moving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). "Once the motion for summary judgment is made and supported, it places an affirmative burden on the non-moving party to go beyond the pleadings and 'by affidavit or otherwise' designate 'specific facts showing that there is a genuine issue for trial.'" *Commercial Union Ins. Co. v. Schmidt*, 967 F.2d 270, 271 (8th Cir. 1992) (quoting Fed.R.Civ.P. 56(e)). The Eighth Circuit has "repeatedly cautioned that summary judgment should seldom be granted in the context of employment actions, as such actions are inherently fact based. Summary judgment is not appropriate unless all the evidence points one way and is susceptible to no reasonable inferences sustaining the position of the nonmoving party." *Hindman v. Transkrit Corp.*, 145 F.3d 986, 990 (8th Cir. 1998) (citations omitted). It is also clear, however, that "[t]o survive a motion for summary judgment, the nonmoving party must 'substantiate his allegations with sufficient probative evidence that would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy.'" *Putman v. Unity Health System*, 348 F.3d 732, 733-34 (8th Cir. 2003) (quoting *Wilson v. Int'l Bus. Machs. Corp.*, 62 F.3d 237, 241 (8th Cir. 1995)).

Defendants' first argument is that the majority of Plaintiff's claims are untimely because Plaintiff was required to "initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). Plaintiff did initiate timely contact with the EEO point of contact, Diana Ryan, concerning Kohn's treatment of her, but Ryan was not the EEO Counselor for the District of South Dakota which would satisfy the requirement to contact a Counselor. Even

3

if all of the Plaintiff's claim were found to be timely and with the correct contact person, however, her claims must be dismissed because she failed to establish a prima facie case of discrimination or retaliation, as explained below.

Title VII makes it unlawful for an employer to discriminate against an employee on the basis of, among other things, the individual's race. *See* 42 U.S.C. §§ 2000e-2(a)(1). When a plaintiff is not able to produce direct evidence of race discrimination, the Court applies the burden-shifting analysis of *McDonnell Douglas*, which first requires the plaintiff to demonstrate a prima facie case of discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Plaintiff admits she has produced no direct evidence of race discrimination. Thus, the *McDonnell Douglas* analysis applies in this case.

To establish a prima face case of race discrimination, Plaintiff must show "1) she was a member of a protected group; 2) she was meeting the legitimate expectations of her employer; 3) she suffered an adverse employment action; and 4) circumstances give rise to an inference of discrimination, as similarly situated employees, who are not members of the protected group, were treated differently." *Jacob-Mua v. Veneman*, 289 F.3d 517, 521-22 (8th Cir. 2002). If plaintiff establishes a prima facie case, the burden then shifts to the employer to advance a legitimate, nondiscriminatory reason for the adverse employment action. *See Fast v. Southern Union Co., Inc.*, 149 F.3d 885, 890 (8th Cir. 1998). If the employer articulates such a reason, "the presumption generated by [the plaintiff's] prima facie case 'drops out,' and [he] must show that there is a genuine factual issue as to discriminatory intent." *Lidge-Myrth v. Deere & Co.*, 49 F.3d 1308, 1311 (8th Cir. 1995); *see Sallis v. University of Minn.*, 408 F.3d 470, 475 (8th Cir. 2005). That is, Plaintiff "must produce 'some additional evidence beyond the elements of the prima facie case' that would allow a rational jury to reject [the employer's] proffered reasons as a mere pretext for discrimination." *Lidge-Myrth*, 49 F.3d at 1311 (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 959 (8th Cir. 1995)); *see Breeding v. Arthur J. Gallagher and Co.*, 164 F.3d 1151, 1157 (8th Cir. 1999). The Plaintiff carries at all times the burden of proving that any adverse employment action was motivated by intentional discrimination. *See Fast*, 149 F.3d at 890.

4

Defendants assert that Plaintiff's allegations do not amount to adverse employment actions. "[A]n adverse employment action is exhibited by a material employment disadvantage, such as a change in salary, benefits, or responsibilities." *LaCroix v. Sears, Roebuck, and Co.*, 240 F.3d 688, 691 (8th Cir. 2001). "Termination, cuts in pay or benefits, and changes that affect an employee's future career prospects are significant enough to meet the standard ...." *Kerns v. Capital Graphics, Inc.*, 178 F.3d 1011, 1016 (8th Cir. 1999); *see Box v. Principi*, 442 F.3d 692 (8th Cir. 2006) (Eighth Circuit decision regarding adverse employment actions that was decided after the oral argument in this case)). Plaintiff claims in her brief opposing Defendants' summary judgment motion that seven adverse employment actions "had a cumulative, material affect upon her career as an AUSA." (Plaintiff's Brief, Doc. 18, at 4.)

The first adverse employment action Plaintiff alleges is that "she was removed from a primary job duty on the CIRCLE Project." (Doc. 18 at 4.) It appears that Plaintiff was removed from the CIRCLE project from December 1999 to April 2000. (Doc. 18 at 7.) Plaintiff did not suffer a demotion or a decrease in pay or benefits due to this removal. She was already prosecuting criminal cases while she was working on the CIRCLE project. Although she worked exclusively on prosecuting criminal cases after she was removed from the CIRCLE project, she was not required to do any work different than what she had already been doing. The Eighth Circuit held in *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir. 1994), that a plaintiff did not establish a reassignment in duties was an adverse employment action where she "suffered no diminution in her title, salary, or benefits." The Plaintiff in *Harlston* complained that the new job duties were more stressful and included less of the type of work she was doing before the reassignment. Plaintiff does not claim that she found her additional caseload too stressful to handle or that she suffered any other material disadvantage due to the increase in her prosecutorial duties. She had an excellent trial record and never received a negative performance evaluation. Explaining further, the Eighth Circuit held that, "changes in duties or working conditions that cause no materially significant disadvantage, such as [the plaintiff's] reassignment, are insufficient to establish the adverse conduct required to make a prima facie case." *Id.*; *see Box*, 442 F.3d at 696 (explaining that "[a] materially adverse action must be more disruptive than a mere inconvenience or an alteration of job responsibilities.

5

There must be a material change in employment status - a reduction in title, salary, or benefits." (citations and quotation marks omitted)). Plaintiff has not established that removal from the CIRCLE project caused any materially significant disadvantage.

The second adverse employment action she alleges is that "she was denied mentoring and career improvement training." (Doc. 18 at 4.) The record establishes that the United States Attorney's Office in the District of South Dakota did not have a formal mentoring program. Rather, the new Assistant United States Attorneys ("AUSA") were given assistance from the more experienced AUSA's on an informal basis. After Plaintiff complained about the lack of mentoring she was receiving from Kohn, however, Gregg Peterman was assigned as Plaintiff's formal mentor. The Eighth Circuit held that, "[a]n employer's denial of an employee's request for more training is not, without more, an adverse employment action." *Griffith v. City of Des Moines*, 387 F.3d 733, 737 (8th Cir. 2004); *see Box*, 442 F.3d at 697 (same). There is no evidence in the record that a lack of additional mentoring or training impacted the material terms and conditions of her employment. A large portion of her position was to work on the CIRCLE project, except for her temporary removal, and she is not claiming that she needed additional mentoring or training to carry out her duties on that project. Her claim appears to be that she did not receive sufficient mentoring or training relating to her duties as a criminal prosecutor. Despite her claim that she needed more training to be a successful trial lawyer, she had an excellent trial record, especially for a lawyer with limited trial experience, received regular pay raises and never received an unsatisfactory performance appraisal for which she was denied a pay raise or put on an employee improvement plan. Plaintiff herself claims she was meeting the legitimate expectations of her employer with regard to her trial work. Thus, Plaintiff cannot establish that a lack of mentoring or training amounted to an adverse employment action.

The third alleged adverse employment action is that, "she was subjected to demeaning comments to supervisors about her performance and her career potential as an AUSA." (Doc. 18 at 4.) There is evidence in the record that Kohn made demeaning comments to other supervisors about Plaintiff's performance, but there is no evidence to show that such comments were related to

6

an adverse employment action. Plaintiff received regular pay raises and her evaluations were all satisfactory. The only evidence in the record about the change in her job responsibilities on the CIRCLE project related to her interactions with tribal leaders, not related to Kohn's comments about her performance. Plaintiff was never denied a position for which she applied and Kohn's comments did not lead to Plaintiff's termination. Rather, at the time her two-year term contract was set to expire, the Interim USA, Michelle Tapken, did not have authority to hire a permanent AUSA, but she sought relief from the hiring freeze to offer Plaintiff another term position. Based upon this record, Kohn's demeaning comments to other supervisors about Plaintiff's performance did not amount to an adverse employment action.

The fourth allegation of an adverse employment action is that, "she was formally reported to various supervisors for making allegedly racially offensive comments, for allegedly 'leaking' confidential information and for making allegedly 'false' report." (Doc. 18 at 4.) Even if Kohn reported Plaintiff for such comments and allegations and they were false, there is no evidence in the record of a material change in the terms or conditions of Plaintiff's employment related to these comments and allegations by Kohn. Thus, these comments and allegations by Kohn do not amount to an adverse employment action.

The fifth alleged adverse employment action is that, "she was not given a yearly performance evaluation or mid-year progress review in 2001." (Doc. 18 at 4.) The record contains Plaintiff's annual performance evaluations for the years 1999 and 2000. (Doc. 14, Exs. 13 and 15.) The evaluation form for the rating period January 1, 2001 to December 31, 2001, does not show that a mid-year performance evaluation was completed for the year 2001. (Addendum to Plaintiff's Brief, Doc. 19, Tab 1, Ex. 3.) But Plaintiff does not point to any evidence that failure to perform a mid-year evaluation in 2001 resulted in any material employment disadvantage to Plaintiff. Plaintiff's two-year term contract was scheduled to expire in August 2001, which was shortly after a mid-year evaluation would have been due. There is no evidence that Plaintiff was denied a pay raise, or that her job duties were changed as a result of Kohn's failure to complete a mid-year performance evaluation in 2001 and this does not amount to an adverse employment action.

7

The sixth alleged adverse employment action is that, "she was recommended for termination by her supervisor." (Doc. 18 at 4.) The allegation is that Kohn recommended that the Interim USA, Michelle Tapken, allow Plaintiff's two-year term contract expire in August 2001 without offering her another position. Even if Kohn made this recommendation, it was not followed by Tapken and Plaintiff was offered another position with the United States Attorney's Office. Thus, Kohn's recommendation did not amount to an adverse employment action.

The seventh and final alleged adverse employment action is that, "she was transferred to a different job, in a different office, with different cases and an entirely different staff." (Doc. 18 at 4.) Plaintiff continually refers to the position in Pierre, South Dakota, as a "transfer" and repeatedly fails to acknowledge that her two-year term position in Rapid City expired in August 2001 and had the opportunity to move to Pierre not been offered, her career as an AUSA in South Dakota would have expired on its own terms. The reason she was offered a "different job, in a different office" is that her term position in Rapid City was expiring and was not going to be renewed. Tapken was an interim USA in South Dakota and there was a hiring freeze in place for all interim USA's. Thus, Tapken did not have the authority to offer a permanent AUSA position to any person, regardless of their race or qualifications. Tapken, however, sought permission from the Department of Justice to offer Plaintiff a term position, which would allow her to remain in the employ of the United States Attorneys Office at least for an additional two-year term. Plaintiff would then have the opportunity to apply for permanent positions after the permanent USA was in place. It is true that the new term position was only offered for the Pierre office, but the new position offered Plaintiff was not a demotion and Plaintiff did not suffer a reduction in pay in the new position or a reduction in responsibilities. In short, if Plaintiff had not been offered the new term position in Pierre, her employment would have ended in August 2001. The new position in Pierre, therefore, was not an adverse employment action.

Plaintiff brought a disparate impact discrimination claim and a retaliation claim, both of which have as an element that Plaintiff suffer an adverse employment action. *See LaCroix*, 240 F.3d at 691 (elements of retaliation claim are that Plaintiff engaged in statutorily protected activity; an

8

adverse employment action was taken against her; and a causal connection between the two events). The Court does not find that Plaintiff met her burden of establishing an adverse employment action in this case. Thus, despite the unwarranted and deplorable way Kohn treated Plaintiff, Plaintiff has failed to establish a prima facie case of discrimination or retaliation and Defendants are entitled to summary judgment on all of Plaintiff's claims in this action. Accordingly,

IT IS ORDERED that Defendants' Motion for Summary Judgment, Doc. 12, is granted.

Dated this 17th day of May, 2006.

BY THE COURT:

/s/ Lawrence L. Piersol
Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: /s/ Sharon Lurs
(SEAL)      DEPUTY